487 So.2d 625 (1986)
NASCO EQUIPMENT COMPANY
v.
BRIGGS-WEAVER, INC. and Washington Oil Field and Marine Supply, Co., Inc.
No. CA-4557.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1986.
John J. Fenerty, III, Metairie, for Nasco Equipment Co. plaintiff-appellee.
Joseph N. Mole, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for Briggs-Weaver, Inc. defendant-appellant.
Before GARRISON, BYRNES and WARD, JJ.
WARD, Judge.
This is an appeal from a judgment of the Trial Court finding defendant Briggs-Weaver, Inc., a distributor of industrial equipment, liable to plaintiff NASCO Equipment Company, a manufacturer of forklifts, for $28,500.00 plus interest and costs for breach of a contract of sale for a forklift.
We affirm. The facts leading to this dispute are as follows. In July of 1982, Washington Oil Field and Marine Supply Company was awarded a subcontract by Petroleum Operators and Support Services, Inc. to supply several forklifts that would meet Department of Energy specifications. Washington requested a price quotation for the forklifts from John Bagley, a general manager of Briggs-Weaver. Bagley quoted prices to Washington on two makes of forklifts which Briggs-Weaver had in stock. Washington accepted the price quotations on one make and bought that forklift directly from Briggs-Weaver.
Washington rejected Briggs-Weaver's price on the other make because a competitor quoted a lower price. When the competitor went bankrupt and was unable to manufacture the forklifts, Washington again spoke with John Bagley at Briggs-Weaver and asked him to find a company which could manufacture the forklifts within its price limits and in accord with the Department of Energy specifications. In response to Washington's request, Bagley telephoned NASCO with whom he had no prior business dealings. Bagley and Charles Kennett, the president of NASCO, discussed the forklift specifications and *626 prices without Bagley disclosing to Kennett the name of his potential customer.
On November 9, 1982, Washington mailed Briggs-Weaver a purchase order, and on that same date NASCO mailed Briggs-Weaver a letter containing firm price quotations for three forklifts. The NASCO letter set forth specifications and costs for each forklift. The cost for each was NASCO's list price minus a dealer discount to Briggs-Weaver.
Kennett and Bagley had several telephone conversations concerning the terms of the November 9 letter. Because Kennett always visited the offices of potential customers to see their facilities and to meet their personnel, he also met with Bagley at his Briggs-Weaver office. During this time period, Bagley told Kennett that Washington was the customer. Bagley further explained that Briggs-Weaver did not want to open an account for Washington because it had a poor credit rating. NASCO, however, wanted to do business with Briggs-Weaver, not with Washington. Nonetheless, Bagley of Briggs-Weaver asked Kennett if NASCO would bill Washington directly rather than following the customary procedure of NASCO billing Briggs-Weaver and Briggs-Weaver then billing Washington. Kennett agreed to do so, although NASCO representatives neither spoke with nor met Washington to discuss the terms of the deal.
As a result of the negotiations between Kennett and Bagley, Briggs-Weaver mailed NASCO a letter dated November 18, 1982 confirming NASCO's November 9 price quotations for its three forklifts. The November 18 letter also confirmed the billing terms Bagley and Kennett had agreed upon. It stated NASCO would bill Washington, and when Washington paid NASCO, NASCO would pay a commission to Briggs-Weaver equal to the difference between NASCO's quotation in the November 9 letter and NASCO's invoice to Washington. Financial data on both Briggs-Weaver and Washington were enclosed with the letter.
NASCO delivered the forklifts to Briggs-Weaver who performed service work on the machines, designated as "warranty work," before delivering them to Washington. Briggs-Weaver was also responsible for any future maintenance of the machines.
NASCO billed Washington for the three forklifts. Washington paid NASCO the entire purchase price for two of the forklifts and a partial payment of $10,000.00 on the $38,500.00 price of the third. After efforts to collect the unpaid $28,500.00 were unsuccessful, NASCO filed this suit against Briggs-Weaver and Washington, alleging that both had bought the forklift. Both defendants answered, and Washington filed an exception of no cause of action against NASCO, denying any contracts or agreements between NASCO and Washington.
The Trial Judge rendered a judgment in favor of NASCO and against Briggs-Weaver for the entire $28,500.00 plus interest and costs. The Trial Judge maintained Washington's exception of no cause of action and dismissed NASCO's suit against Washington. In his reasons for judgment, the Trial Judge stated that NASCO's November 9 quotations for the three forklifts and Briggs-Weaver's November 18 letter confirming those quotations constituted a purchase by Briggs-Weaver of the forklifts from NASCO. The Trial Judge found that any ambiguity in Briggs-Weaver's November 18 letter, concerning the request to bill Washington, was to be construed against the drafter, Briggs-Weaver.
In this appeal Briggs-Weaver contends there was not a sale between NASCO and Briggs-Weaver but only a sale between NASCO and Washington. Additionally, Briggs-Weaver argues that it was merely a broker who arranged the sale between NASCO and Washington, and, as a broker, it is not liable to the seller.
In support of its first argument, Briggs-Weaver asserts that there was no agreement as to price, an essential element of a sale, because NASCO's November 9 letter quoted a price of $36,252.00 for the forklift while Briggs-Weaver's November 18 reply *627 confirmed a price of $38,500.00. Briggs-Weaver further asserts that its November 18 letter was not ambiguous but instead was a clear confirmation of NASCO's order from Washington and Washington's direct payment to NASCO. A sale directly to Washington, Briggs-Weaver contends, is proved by NASCO's internal documents, invoices, and statements which, subsequent to the November 18 letter, all identify Washington as the customer.
We hold there was a sale between NASCO and Briggs-Weaver, and we affirm the Trial Court judgment.
Louisiana Civil Code Article 2456 provides:
The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.
Louisiana Civil Code Article 2464 provides in part:
The price of the sale must be certain, that is to say, fixed and determined by the parties.
In the present case, NASCO's November 9 letter to Briggs-Weaver quoted a firm price of $36,252.00 for the forklift. Briggs-Weaver's November 18 reply to NASCO stated: "I am writing to confirm the order for the three NASCO forklifts you quoted us in your letter of November 9, 1982." These letters indicate that Briggs-Weaver agreed to purchase the forklift from NASCO for $36,252.00. Although Briggs-Weaver's statement that NASCO should bill Washington $38,500.00 for the forklift creates some ambiguity, the Trial Judge correctly held that any ambiguity should be construed against Briggs-Weaver. Car Kits, Inc. v. Bolt-On Parts, Inc., 439 So.2d 479 (La.App. 1st Cir.1983). Clearly NASCO relied upon Briggs-Weaver's credit, not Washington's, and NASCO delivered the forklifts to Briggs-Weaver, not Washington. Thus we believe the Trial Judge was also correct when he held that a sale was completed and that Briggs-Weaver was the purchaser.
Briggs-Weaver's second argument is that it was a broker-mandatary under La.C.C. art. 3016 who merely negotiated a deal to benefit both NASCO and Washington. Admittedly there exist certain facts which indicate there was a sale from NASCO to Briggs-Weaver, and others which suggest Briggs-Weaver merely negotiated as a mandatary-broker. We, however, reject the argument that Briggs-Weaver was merely a broker because Briggs-Weaver did more than negotiateit purchased the forklift. The power of a mandatary to buy or sell property for another must be express. La.C.C. art. 2997; Derouen's Estate v. General Motors Acceptance Corp., 245 La. 615, 159 So.2d 695 (1964). A broker, without such express power to buy and sell, cannot consummate a sale. In this case, there is no evidence that Briggs-Weaver was expressly authorized by either NASCO or Washington to act for them to buy or sell forklifts. Hence, we hold Briggs-Weaver purchased the forklift on its own behalf.
For these reasons, we affirm the judgment of the Trial Court holding Briggs-Weaver liable for $28,500.00, the unpaid balance of the purchase price of the forklift, plus interest and costs.
AFFIRMED.