522 So.2d 1335 (1988)
W.L. SOMNER COMPANY, INC., Plaintiff-Appellee,
v.
PACIFIC-ATLANTIC OIL COMPANY and James B. Spillers, Defendant-Appellant.
No. 19446-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1988.
*1336 Theus, Grisham, Davis & Leigh by Paul D. Spillers, Monroe, for Pacific-Atlantic Oil Co., defendant-appellant.
M. Randall Donald, Monroe, for W.L. Somner Co., plaintiff-appellee.
Before MARVIN, FRED W. JONES, Jr. and LINDSAY, JJ.
MARVIN, Judge.
From a judgment in an action on open account, the corporate defendant, Pacific-Atlantic Oil Company (P-A), appeals, contending that the sale was made to another corporate entity which became bankrupt after the sale. The other entity, Unique Drilling Company, Inc., shared offices with and drilled oil and gas wells for P-A.
P-A also complains of some evidentiary rulings and the award of attorney fees by the trial court. We amend to delete the award of attorney fees and otherwise affirm the judgment.

FACTS
James Spillers, president of P-A and trustee of his family trust that owned all of the corporate stock of P-A, was also the secretary of Unique Drilling and owned 1/3 of its corporate stock. Plaintiff was solicited for a quote on a rotary drilling table for Unique in September 1984. Plaintiff had done business with P-A over the years, but not with Unique.
The trial court accepted plaintiff's version of the transaction. Plaintiff's salesman, Templeton, said that Spillers was told that plaintiff would not sell on credit to Unique but would sell to P-A which had a good credit reputation and had done business with plaintiff in the past. Templeton said that Spillers understood and agreed that the rotary table would be sold and billed to P-A to expedite its delivery at a designated location to Unique.
Plaintiff introduced its completed business forms which showed that P-A was the "customer" and purchaser who was to be billed and that delivery of the rotary table was to be made to Unique.
Templeton and his superiors explained plaintiff's strict policy of selling on credit only to customers who had an established credit account or who had been approved as new credit customers after investigation. Salesmen who violated plaintiff's credit policy risked being fired.
Templeton explained:
I knew exactly where the rotary table was going. I knew it was going to Unique Drilling, but my position on the deal was that Unique Drilling had no credit with me and there was no way that I could sell them a rotary table at *1337 this price. I had to have someone with credit and that's where Pacific-Atlantic came in. And that's my stand, precisely.

* * * * * *
There's no vagueness on that because, like I say, it was a strict company policy that you sold nobody nothing without credit.
Templeton knew that Spillers was connected with P-A and Unique Drilling. He said he proposed to Spillers and to Unique's president, B.J. Crowley, that the sale be made to P-A because Unique had no credit with plaintiff and because plaintiff had been told that the rotary table was immediately needed to get a drilling rig in operation. Templeton said Spillers replied, "Yeah, fine. Let's just get itget it on the way."
Plaintiff's vice-president, Knighton, approved the sale to P-A subject to a down payment of about one quarter of the purchase price, with the balance due in 30 days. Knighton said the only alternative to a credit sale on these terms to P-A was a cash sale because Unique "had no established account and the information that was brought to me would not warrant a sale of that size being made on credit [to Unique]." He said it was not unusual for plaintiff to sell to one entity and deliver the item sold to another.
Spillers signed the $5,000 Unique check for the down payment at Crowley's request and handed it to Templeton when Templeton came to Unique's office in Monroe. Spillers said Crowley solely negotiated the sale with Templeton. P-A's own office manager, Ms. Kinard, testified Spillers negotiated with Templeton. Crowley, Unique's president, did not testify because he was not named as a witness or sequestered and had heard the other witnesses testify.
Plaintiff did not ask P-A for a written purchase order or for a signature on an "acknowledgment of customer order" form which plaintiff mailed to P-A to the attention of Spillers a few days after Templeton visited Spillers in Monroe and received the Unique check as the down payment. The trial court resolved the who-made-the-purchase issue in plaintiff's favor and against P-A after hearing conflicting evidence and assessing credibility.
The trial court's factual findings are supported by the record and are not clearly wrong. Arceneaux v. Domingue, 365 So. 2d 1330 (La.1978).
P-A's office manager, Ms. Kinard, testified that she immediately told plaintiff the account was billed incorrectly when P-A received plaintiff's "acknowledgment of customer order" and invoice. Her letter to plaintiff demanding that the charge be removed from P-A's account refers to Templeton's assurance that "the matter would be taken care of." This letter was written about two months after the sale and delivery had been accomplished and when the account was already past due.
Templeton was not asked about any post-sale conversations with P-A personnel. He and his superiors insisted that plaintiff would not have made the sale on credit unless it was made to P-A. The trial court accepted plaintiff's version over P-A's version. We cannot say the trial court was clearly wrong in resolving the conflicting evidence in plaintiff's favor. See and compare Jonesboro Concrete, Inc. v. Louisiana Bldrs. Sup. Co., 245 So.2d 473 (La. App. 2d Cir.1971), writ denied, 258 La. 761, 247 So.2d 862 (1971); Nasco Equipment Co. v. Briggs-Weaver, Inc., 487 So.2d 625 (La.App. 4th Cir.1986); and Fairchild Motor Corporation v. Eberhardt, 189 So. 141 (La.App. Orl.1939).
The fact that Unique made the down payment does not preclude a finding that P-A was the purchaser. See Jonesboro Concrete, Inc. v. Louisiana Bldrs. Sup. Co., supra. The fact that, and the circumstances under which, Unique was later billed was explained by plaintiff's witnesses. Plaintiff's initial invoice to P-A and its purchase requisition and order sent to its supplier to special order the rotary table identify P-A as the customer to be billed and Unique Drilling as the party to receive shipment. P-A directed shipment via "Hotshot," which was described as the quickest way to ship oilfield equipment.
*1338 These documents, contemporary with the sale, corroborate the testimony of Templeton and Knighton that the sale was made to P-A. Knighton explained that the $16,000 balance was later rebilled to Unique and that plaintiff filed a proof of claim in Unique's bankruptcy in an effort to collect the debt which had not been timely paid by P-A or by Unique. The credit balance was due 30 days after the sale.

ATTORNEY FEES
Plaintiff had no contractual agreement for attorney fees with P-A and admittedly did not send the demand letter required by LRS 9:2781 to support an award of attorney fees. We shall amend the judgment to delete the award. Compare General Supply of Houma v. Cenco Supply, 489 So.2d 989 (La.App. 1st Cir.1986).

EVIDENTIARY RULINGS
P-A contends the trial court erred in allowing plaintiff to introduce Templeton's deposition as evidence without proof that plaintiff was unable to procure Templeton's attendance by subpoena. After P-A briefed this issue on appeal, the trial court, on plaintiff's ex parte motion, ordered that the record be supplemented with records from the district clerk and the sheriff showing that plaintiff's subpoena for Templeton could not be served. Defendant then argued the trial court lacked jurisdiction to supplement the record after this court's jurisdiction attached. We find the deposition admissible and do not consider the jurisdictional argument.
When the deposition was offered, plaintiff's counsel said Templeton "has been subpoenaed but he's not present, I think I've previously communicated that ..." Defendant's counsel replied that "plaintiff's counsel has made every effort to obtain his presence, it's not through his fault that he's not here. However, due to these fortuitous circumstances we think justice demands that two additional [impeachment] witnesses be permitted to testify."
The court allowed defendant to call two witnesses who were not listed in the pre-trial statement. One was excused after repeated hearsay objections were sustained, and the other, Unique's president, Crowley, was not allowed to testify because he was in the courtroom and heard other witnesses testify after the court had placed other witnesses under the rule of sequestration.
P-A's only response in the trial court on the admissibility of the deposition was to request that impeachment witnesses be allowed. P-A conceded Templeton's unavailability and did not object to the admissibility of the deposition. A party who acquiesces in a ruling at trial cannot argue the correctness of the ruling on appeal. See CCP Art. 1635; Calderon v. Johnson, 453 So.2d 615 (La.App. 1st Cir.1984); Grusich v. Grusich, 447 So.2d 93 (La.App. 4th Cir.1984).
P-A's counsel asked plaintiff's vice-president to produce a letter he had written to the company's in-house counsel in Houston regarding collection of this account. Plaintiff objected that the letter was protected by the attorney-client privilege. Although finding there was nothing in the letter that had not already come out in evidence, the trial court sustained plaintiff's objection "as an abundance of precaution." P-A's counsel responded, "we're satisfied."
P-A contends here, however, that the trial court erred in finding the letter privileged. Again, P-A's acquiescence in the ruling at trial precludes our review. Grusich, supra. P-A did not make a proffer of the excluded letter, the contents of which the trial court found to be cumulative of evidence already admitted. See CCP Art. 1636; McLean v. Hunter, 495 So.2d 1298 (La.1986); Lilly v. Conoco, Inc., 463 So.2d 28 (La.App. 5th Cir.1985), writ denied, 464 So.2d 1382 (La.1985). Under these circumstances, we find no error.
Plaintiff offered a purchase requisition and a purchase order sent to its supplier to show that P-A was named as the "customer" to be billed for the rotary table and to show that Unique was to receive the shipment. P-A's objections that the documents were irrelevant and self-serving were overruled. P-A here complains of that ruling *1339 and additionally asserts that the documents were hearsay in large part.
We do not review the hearsay argument because it raises a different ground for the objection than those given at trial. Calderon v. Johnson, supra. The fact that evidence is self-serving affects its weight but not its admissibility. Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3d Cir.1975), writ denied, 329 So.2d 458 (La.1976).
The trial court noted that while the exhibits may not legally establish that P-A was the purchaser, they would show plaintiff's understanding of who the purchaser was when the sale was made. We find no abuse of the court's great discretion in ruling that these exhibits were relevant and in weighing them in the light of other evidence. See Arledge v. Bell, 463 So.2d 856 (La.App. 2d Cir.1985).

DECREE
The judgment is amended to delete the attorney fee award. In all other respects, and at appellant's cost, the judgment is affirmed.
AMENDED AND AFFIRMED.