569 So.2d 261 (1990)
TUTORSHIP OF Lisa Renee PRICE and Bastrop National Bank, Plaintiffs-Appellees,
v.
STANDARD LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 21876-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
Writ Denied January 11, 1991.
*262 Kirkland, Barfield & Panter by S. Craig Panter, Jackson, Miss., Davenport, Files & Kelly by J. Edward Patton, II, Monroe, for defendant-appellant.
Hamilton & Carroll by Orlando N. Hamilton, Jr., Oak Grove, Rankin, Yeldell, Herring & Katz by Alex W. Rankin, Bastrop, for plaintiffs-appellees.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
SEXTON, Judge.
The defendant, Standard Life Insurance Company, appeals a judgment in favor of the plaintiffs, Theresa Aswell, as natural tutrix of her minor daughter, Lisa Renee Price, and Bastrop National Bank, for $47,253.07, the proceeds of a life insurance policy covering Phillip Hobbs. The trial court also ordered defendant to pay legal interest from the date of judicial demand and, pursuant to LSA-R.S. 22:656, an eight percent penalty interest from June 20, 1983, the date the defendant received notice a claim was being made under the policy. We reverse the award of penalty interest and affirm the remainder of the judgment.
On October 20, 1982, Phillip Hobbs obtained a credit term life insurance policy from the defendant/insurer; this policy had a term of six months and provided coverage in the amount of $47,253.07. The policy, issued as security for a loan, named plaintiff, Bastrop National Bank, as the creditor/beneficiary; the estate of Phillip Hobbs was the contingent beneficiary.
In November 1982, Phillip Hobbs resided with Channing "Buster" Fiske in Blanchard, Louisiana. According to trial testimony, friends and relatives of Hobbs have not seen nor heard from Hobbs since mid-November 1982. On November 18, 1982, the Caddo Parish Sheriff's Office was informed of the disappearance of Hobbs.
At trial, Jeffrey Lunsford testified that Fiske informed him that he (Fiske) had killed Hobbs and buried his body in Arkansas. Lunsford also testified that on November 14, 1982, he assisted Fiske in disposing of certain personal property which had belonged to Hobbs. Fiske, like Hobbs, has reportedly not been seen since mid-November 1982, when Lunsford saw him drive off in Hobbs' pickup truck, in possession of Hobbs' stereo and VCR. It was Fiske's stated intention to take Hobbs' birth certificate, move to New Mexico, and live under the name Phillip Hobbs.
The Caddo Parish Sheriff's investigation into Hobbs' disappearance centered on Fiske. Sheriff Deputy Bobby Abraham testified that he learned Fiske was in custody *263 in Charleston, South Carolina, in late-1982. When extradition efforts were initiated to return Fiske to Caddo Parish for the Hobbs investigation, it was learned that Charleston officials had released Fiske from custody. Other than a rumor that Fiske was in El Paso, Texas, which Deputy Abraham's investigation proved to be unsubstantiated, Fiske's whereabouts have been unknown to Caddo Parish officials since 1982. The criminal file on Hobbs' disappearance is still considered open. Hobbs' body has not been found.
On June 20, 1983, the defendant, Standard Life Insurance Company, learned of Bastrop National Bank's request for payment under Hobbs' life insurance policy.
On July 25, 1983, Theresa Aswell filed a petition, seeking appointment as the natural tutrix of Lisa Renee Price, the daughter of Ms. Aswell and Hobbs.[1] The petition also requested that Miss Price be given provisional possession of Hobbs' property pursuant to LSA-C.C. Art. 60. Letters of tutorship were thereafter issued to Ms. Aswell.
On December 16, 1983, Ms. Aswell filed a second petition, again seeking, on behalf of the minor Price, provisional possession of Hobbs' property. Bastrop National Bank joined in the petition as a plaintiff, and it was alleged that the defendant, Standard Life Insurance Company, should be required to pay the proceeds of Hobbs' life insurance policy.
Trial was held on September 25, 1989, and a judgment was rendered on November 2, 1989. The trial court's oral and written reasons for judgment reflect its finding that plaintiffs proved by a preponderance of the evidence that Hobbs is deceased and that his death occurred in November 1982 within the term of his life insurance policy. The trial court awarded legal interest from the date of judicial demand. The trial court also found that an eight percent penalty interest dating from June 20, 1983, was appropriate pursuant to LSA-R.S. 22:656. The trial court found that the defendant, when it was presented with the claim, had the duty to investigate Hobbs' disappearance. If the defendant had investigated the claim, the trial court reasoned, it would have had due proof of Hobbs' death and there was thus no just cause for the defendant's failure to timely pay the claim.
The defendant's appeal raises the following issues: (1) whether Lunsford's testimony that Fiske told him he had killed Hobbs was properly found to fall under the statement against interest exception to the hearsay rule; (2) whether there was sufficient evidence to support the trial court's determination that Hobbs died during the term of the insurance policy; (3) whether the trial court erred in awarding penalty interest pursuant to LSA-R.S. 22:656; and (4) whether the trial court erred in awarding legal interest from the date of judicial demand.
Defendant's first assignment of error complains of the admissibility of certain testimony of Jeffrey Lunsford regarding statements Lunsford attributed to Channing Fiske. While conceding that the statements at issue are statements against interest, defendant asserts that they are nevertheless inadmissible hearsay under LSA-C.E. Art. 804 because the declarant is not a party and there was no showing that Fiske was unavailable. The portions of Art. 804 pertinent to the instant issue provide:
Art. 804. Hearsay exceptions; declarant unavailable
A. Definition of unavailability. Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
....
(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. A declarant *264 is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
....
(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
....
Plaintiff's counterargument is that defendant waived the issue of Fiske's unavailability by failing to specifically argue this issue at trial.
When Lunsford initially attempted to testify as to Fiske's statements to him regarding the death of Hobbs, defense counsel[2] objected to the testimony as hearsay. Counsel for Ms. Aswell responded by noting that this was a statement against interest and therefore an exception to the hearsay rule under LSA-C.E. Art. 804(B)(3). Specifically, plaintiff's counsel noted that Fiske was unavailable as a witness, relying on Deputy Abraham's prior testimony that he, and by implication the Caddo Parish Sheriff's Department, was unaware of Fiske's location. It was further noted by plaintiffs that the statement by Fiske that he had killed Hobbs was obviously a statement against Fiske's interest.
Defense counsel's argument at trial in support of his objection did not concern the alleged unavailability of Fiske. Rather, defense counsel argued that the statement against interest exception to the hearsay rule was inapplicable as the declarant, Fiske, was not a party to the lawsuit. The trial court clarified defendant's argument as follows:
THE COURT: You are saying that the statement against interest isis personal or has to be in regard to a litigant and not a witness, I mean, not a third party?
DEFENSE COUNSEL: Yes, sir, that's what I'm saying.
Thus defense counsel's objection was that a statement against interest is only admissible against a litigant. Louisiana no longer defines a statement made by a party litigant as hearsay. LSA-C.E. Art. 801(D)(2). At issue in the instant case is a statement made by a person who is not a party to the proceedings which is against that person's interest. Such a statement is classified as an exception to the hearsay rule if the declarant is unavailable as a witness. LSA-C.E. Art. 804(B)(3). Defendant's contention on appeal, then, is that the plaintiffs failed to demonstrate Fiske's unavailability.
A party must make a timely objection to evidence which the party considers to be inadmissible and must state the specific ground for the objection. LSA-C.E. Art. 103; LSA-C.C.P. Art. 1635. The reason for this rule is to afford the trial court an opportunity to prevent or correct prejudicial error. McLaughlin v. Fireman's Fund Insurance Company, 549 So.2d 327 (La.App. 1st Cir.1989); Calderon v. Johnson, 453 So.2d 615 (La.App. 1st Cir.1984). An appellate court will therefore not consider a ground for objection different from the grounds raised at trial. W.L. Somner Company, Inc. v. Pacific-Atlantic Oil Company, 522 So.2d 1335 (La.App. 2d Cir. 1988); McLaughlin v. Fireman's Fund Insurance Company, supra.
In the instant case, the grounds asserted in support of the hearsay objection *265 on appeal differ from the grounds urged at trial. If defense counsel had challenged plaintiff's assertions of Fiske's unavailability at trial, the trial court would have had the opportunity to require the presentation of and thereafter to have considered any further evidence regarding Fiske's whereabouts. We thus conclude that the objection made in the trial court was on an insufficient basis and is thus waived. See W.L. Somner Company, Inc. v. Pacific-Atlantic Oil Company, supra.
Moreover, even assuming that defendant's objection preserved the issue for appeal, we are inclined to believe that Fiske's unavailability is demonstrated by the record. The trial testimony as a whole, including both Deputy Abraham's testimony prior to the hearsay objection and Jeffrey Lunsford's testimony following the objection would lead to the reasonable conclusion that Fiske was unavailable as a witness for the purposes of LSA-C.E. Art. 804(A)(5). Lunsford further testified that after Fiske had said he had killed Hobbs, that he and Fiske loaded Hobbs' property in Hobbs' pickup truck.[3] Some of Hobbs' property was sold by Fiske and Hobbs' clothing was discarded. Lunsford last saw Fiske drive away in Hobbs' truck after stating his intention of moving to New Mexico and living under Hobbs' name with Hobbs' birth certificate. Lunsford, apparently a good friend of Channing Fiske, has not heard from Fiske since that date in mid-November 1982.
Deputy Abraham learned Fiske had been arrested in South Carolina, but he had been released by the time extradition efforts were initiated by Caddo Parish officials. Rumors that Fiske was in New Mexico and El Paso, Texas, could not be substantiated. Caddo Parish officials thus have no knowledge of Fiske's whereabouts. Apparently, Fiske is still being sought in connection with the Hobbs investigation.
Defendant further argues that the evidence presented may have been sufficient to support a finding that Fiske was unavailable to testify when suit was initially filed in 1983, but it is insufficient to support a finding that Fiske was unavailable in 1989, the date of trial.
This argument questions what plaintiffs should have reasonably done to procure Fiske's attendance at trial before he could be termed unavailable to testify. Although a witness is not considered unavailable unless a party makes a good faith effort to obtain his presence at trial, the law does not require the doing of a futile act. Therefore, where it is highly improbable that efforts to locate a witness would have been successful and have led to the witness' appearance at trial, the concept of reasonableness does not require that such futile efforts be executed. See, Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).[4]
In the instant case, it appears that it would have been futile for plaintiffs to have attempted to subpoena or otherwise locate Channing Fiske. The Caddo Parish Sheriff's Office had attempted, without success, to locate Fiske in connection with a murder investigation. Assuming the sheriff's office could not locate the primary suspect in an apparent murder case, it *266 would have been unreasonable to have required plaintiffs in this civil matter to have taken further steps to locate Fiske. Channing Fiske's whereabouts were unknown and it was reasonable to infer that he was unavailable to testify at trial. See, Schexnaider v. Rome, 485 So.2d 245 (La.App. 3rd Cir.1986); New Orleans Public Service, Inc. v. Masaracchia, 464 So.2d 866 (La.App. 4th Cir.1985). Compare, Thompson v. Simmons, 499 So.2d 517 (La.App. 2d Cir.1986), writ denied, 501 So.2d 772 (La. 1987) (where a party made no showing as to why declarant was unavailable).
In light of our conclusion that Fiske's statement to Lunsford that he had killed Phillip Hobbs was properly considered, the trial court conclusion that Hobbs died in mid-November 1982 was not clearly wrong. At that time, the life insurance policy was still in effect and the trial court did not err in awarding the plaintiffs the proceeds of that policy, $47,253.07.
Although we find the trial court correctly awarded the life insurance proceeds, we reach a different result with regard to the award of penalty interest. LSA-R.S. 22:656 provides:
§ 656. Payment of claims; life policies; penalty
All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days after the date of receipt of due proof of death, and if the insurer fails to do so without just cause, the amount due shall bear interest at the rate of eight percent per annum from date of receipt of due proof of death by the insurer until paid.
If an insurer does not receive due proof of an insured's death, the penalties provided in the above statute are inappropriate. White v. Trans-World Life Insurance Company, 484 So.2d 263 (La.App. 3rd Cir.1986); Carr v. Port Ship Service, Inc., 406 So.2d 632 (La.App. 4th Cir.1981), writ denied, 412 So.2d 85 (La.1982). Additionally, penalties are inappropriate where an insurer has just cause or is in good faith in failing to promptly pay life insurance proceeds. An insurer's refusal to pay may be in good faith even though its defense is not sufficient to prevent recovery under the policy. Vining v. State Farm Life Insurance Company, 409 So.2d 1306 (La. App. 2d Cir.1982), writ denied, 412 So.2d 1098 (La.1982); Bertrand v. Protective Life Insurance Co., 419 So.2d 1254 (La. App. 3rd Cir.1982); Carr v. Port Ship Service, Inc., supra.
Here the record fails to reveal the nature of the proof of death the plaintiffs presented to defendant. Ordinarily, a death certificate would seem the usual manner of presenting proof of death to a life insurer. Obviously, there could be no death certificate presented to defendant in this case. Although defendant admits receiving notice of a claim on June 20, 1983, there has been no showing that the defendant ever had due proof that Hobbs was dead.
Nor does the record reflect that the defendant was in anything but good faith in declining to pay the claim. To the contrary, it appears the defendant undertook its own independent investigation of the circumstances surrounding Hobbs' disappearance. Although the record is again deficient in that it fails to reveal the extent and results of the defendant's investigation, we nonetheless consider the mere act of investigating the situation an indication of the defendant's good faith. In light of the unique facts of this case, we must find that the trial court was in error in awarding the eight percent penalty interest.
The final issue concerns the appropriate date from which legal or judicial interest should begin to accrue. The trial court awarded legal interest from the date of judicial demand; defendant argues that legal interest should only be awarded from date of judgment.
In Mini Togs Products, Inc. v. Wallace, 513 So.2d 867 (La.App. 2d Cir.1987), writs denied, 515 So.2d 447, 451 (La.1987), this court held that legal interest was due at least from the date of judicial demand on a claim for damages arising out of a breach of contract claim. Legal interest was found to run from the date a debt is due, LSA-C.C. Art. 2000. The debt became due *267 from the moment of active violation of the contract or from the time the defendant was put in default, which could be no later than the date suit was filed. LSA-C.C. Art. 1991. Legal interest was therefore due from that date regardless of whether the precise amount of the claim was unliquidated, disputed, or not ascertainable with any certainty on the date suit was filed.
Defendant seeks to distinguish Mini Togs, arguing that the insurance proceeds did not become "due" until there was due proof of the death of Phillip Hobbs, which occurred, it is argued, only on the date of the trial court's judgment. Defendant's attempt to distinguish Mini Togs is unconvincing. The trial court judgment that Hobbs is deceased and that his death occurred during the term of his life insurance policy is not some talismanic entity constituting due proof of Hobbs' death which must thereafter be presented to the defendant before the proceeds are to be paid. Rather, that judgment reflects that the evidence presented at trial itself constituted due proof of Hobbs' death during the term of the policy.
The same argument proposed by this defendant could be made by any defendant in any lawsuit (even the defendants in Mini Togs)that a disputed claim was not "due" to the plaintiff until the trial court rendered judgment that such claim was owed.
As in other cases involving insurance disputes, legal interest is properly awarded from the date of judicial demand. See, Ainsworth v. Government Employees Insurance Company, 433 So.2d 709 (La. 1983); Shepard v. State Farm Mutual Automobile Insurance Company, 545 So.2d 624 (La.App. 4th Cir.1989), writs denied, 550 So.2d 627, 628 (La.1989); Kennedy v. Southern Security Insurance Company, 540 So.2d 1204 (La.App. 3rd Cir. 1989) (on application for rehearing); River Road Construction, Inc. v. Canal Indemnity Company, 538 So.2d 625 (La.App. 1st Cir.1988) (en banc).
In conclusion, we affirm the trial court's award of the life insurance proceeds and the imposition of legal interest from the date of judicial demand. However, we find the trial court erred in finding the defendant did not have just cause for refusing to pay the proceeds and reverse the judgment to the extent that it awarded an eight percent penalty interest. Costs of this appeal are assessed to appellant.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] By declaration made July 9, 1982, before a notary public and two witnesses, Hobbs acknowledged that Lisa Renee Price was his illegitimate daughter.
[2] Appellate counsel did not represent the defendant at trial.
[3] Even though this was the statement objected to as inadmissible hearsay, the trial court could consider the statement for purposes of determining Fiske's unavailability. LSA-C.E. Art. 104(A). See especially comment (d) to the article, specifically noting that this provision supercedes decisions such as Succession of Martin, 424 So.2d 1219 (La.App. 1st Cir.1982), which held that hearsay evidence may not be considered in determining a witness' unavailability for trial.
[4] Although Roberts dealt with the issue of unavailability in the context of a criminal matter and thus considered the question of unavailability primarily for purposes of the Sixth Amendment confrontation clause, the analogy is appropriate. It has been said that "hearsay rules and the Confrontation Clause are generally designed to protect similar values," California v. Green, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970), and "stem from the same roots." Dutton v. Evans, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970). See also, Ohio v. Roberts, supra, 448 U.S. at 66, 100 S.Ct. at 2539. If anything, the degree of effort which must be made to locate a witness before he may be declared unavailable is even greater in a criminal proceeding. McCormick, Evidence, § 253 at 609 (2d Ed.1972).