# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1341

**BARBARA ANN MOSS MCMANUS MCCANN**

**VERSUS**

**JUDSON HUGH MCCANN, II**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2009-3210
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## DAVID E. CHATELAIN\*
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of James T. Genovese, Shannon J. Gremillion, and David E. Chatelain, Judges.

**AFFIRMED.**

**Kenneth Michael Wright**
**Attorney at Law**
**203 West Clarence Street**
**Lake Charles, Louisiana 70601**
**(337) 439-6930**
**Counsel for Defendant/Appellant:**
  **Judson Hugh McCann, II**

**Brad Guillory**
**Loftin, Cain & LeBlanc**
**113 Dr. Michael Debakey Drive**
**Lake Charles, Louisiana 70601**
**(337) 310-4300**
**Counsel for Defendant/Appellant:**
  **Judson Hugh McCann, II**

---

\*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Walter M. Sanchez**
**The Sanchez Law Firm, L.L.C.**
**901 Lakeshore Drive, Suite 1050**
**Lake Charles, Louisiana  70601**
**(337) 433-4405**
**Counsel for Plaintiff/Appellee:**
      **Barbara Ann Moss McManus McCann**

**CHATELAIN, Judge Pro Tempore.**

Judson Hugh McCann, II, the estranged husband of Barbara Ann Moss McManus McCann, appeals the trial court's August 6, 2009 issuance of a Louisiana Uniform Abuse Prevention Order (sometimes hereinafter referred to as "Domestic Abuse Order").[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Judson and Barbara were married on July 28, 2001. The couple began living separate and apart in early June 2009. On June 29, 2009, Barbara filed a Petition for Divorce and Determination of Incidental Matters. She claimed therein that she was in immediate danger of harassment, and she requested the issuance of an ex parte temporary restraining order (TRO) prohibiting Judson from threatening or harassing her. The trial judge signed the requested TRO on July 2, 2009. Several weeks later, Barbara filed a Petition for Domestic Abuse Protection (PDAP), pursuant to La.R.S. 46:2131-43. Barbara filed the PDAP on behalf of herself and her two minor granddaughters who live next door to her. Barbara noted in the PDAP that Judson had shoved her; threatened her with bodily harm; and struck her with keys, cutting her hand and arm. She further detailed the abuse that Judson had inflicted upon her as follows:

> On July 4, 2009, McCann came to Petitioner's home, sweating from jogging and complaining of chest pains. She drove him to his home in the co-owned Mercedes which is in her possession. Once at his home, McCann quit pretending to be ill and made a grab for the car keys in her possession. McCann struck her on the hand and arm with the keys, cutting both. The Lake Charles Police Department was

---

[1]Relying upon La.R.S. 46:2136.1, Barbara asserted in her appellate brief that if this court affirms the trial court's ruling, she is legally entitled to collect all attorney fees and costs associated with defending this appeal. However, at oral argument Barbara withdrew this request, and, thus, the issue of whether she would be entitled to additional attorney fees and costs, if successful, is no longer before us.

1

called and a complaint was filed, Case No. 09-006430, and a request for Formal Prosecution has been made for Domestic Abuse Battery.

Subsequently, on July 13, 2009, 3 of the tires on the Mercedes were slashed with a knife in her driveway.

On July 14, 2009, tires were cut on the cars of Brent McManus, Petitioner's son and father of the minors McKenzie & Madison referenced herein. Later that day, lawn furniture and items of movable property belonging to Brent were thrown in the lake at his residence under construction at 238 Shell Beach Drive. Video surveillance from a neighbors home confirmed McCann as the vandal. He has been rearrested, upon information and belief, on felony Criminal Damage to Property Charges.

Petitioner is afraid for the minor grandchildren who are at both addresses [noted in the petition].

The PDAP included a notarized Affidavit/Verification signed by Barbara stating that the allegations contained therein were true and that she believed Judson posed a threat to the safety of her and her granddaughters. The trial court signed an order on July 21, 2009, granting the relief prayed for in the PDAP which, among other things, prohibited Judson from going within one hundred yards of Barbara's residence. Judson was ordered to show cause on August 5, 2009, why the TRO and other requested relief should not be made protective orders.

At the August 5, 2009 hearing, the trial court heard testimony from Barbara and her daughter-in-law, Kim McManus. Barbara's testimony about the key incident basically conformed to her description of the incident in the PDAP. She further expounded upon the incident, explaining that Judson had gotten angry when she refused his offer to come inside once they arrived at his house. Thereafter, he grabbed the keys out of the vehicle and tried to take them off the key ring. In addition to her car key, the key ring also held keys to her home, which had recently been rekeyed. When she demanded that he return her keys, Judson slung his arm at her, cutting her arm and two of her fingers with the keys

2

and causing them to bleed. Barbara identified a photograph labeled as Exhibit P-1 which showed her right arm with a deep scratch and bruise.[2] Barbara stated that after Judson struck her, she walked across the street and called 9-1-1. A unit from the Lake Charles Police Department responded to her call and retrieved the keys for her, and she was able to return home in the vehicle.

Barbara testified about an event that happened just two days prior to the August 5, 2009 hearing. She explained that as she was taking out the trash, Judson drove in front of her house, yelling at her and honking his horn. He then drove down the street, turned around, and drove back to her driveway, where he stopped and told her, "You must really be happy with all the lying you're doing." Barbara explained that Judson was about ten feet away from her during the incident.

When Barbara attempted to testify regarding two incidents that were captured by her neighbor's video surveillance cameras, counsel for Judson objected on the basis that the recordings themselves were the best evidence of their contents. After Barbara explained that both of the original video recordings[3] had been turned over to law enforcement, the trial court overruled Judson's objection and allowed Barbara to testify as to what she saw in the recordings. The first video was taken on July 14, 2009, and involved the vandalism of property at Barbara's son's residence. Barbara stated that she recognized Judson in the video.

---

[2]Barbara stated that she had also taken a photograph of the injuries to her fingers but that the photograph did not come out.

[3] In a supplemental brief filed in this court, Barbara explained that although the original videos were not available at the trial, on the morning of trial, her daughter-in-law provided counsel with a portable USB drive that contained copies of the two videos. Counsel for Barbara and Judson attempted to view the files, but technical problems hampered their attempts. Ultimately, only one of the files was opened and viewed in the secretarial area. As far as we can tell, this copy of the video was not introduced by either party nor was it viewed by the trial court.

This incident was mentioned in the PDAP. The second video was taken on August 4, 2009, just one day before the scheduled domestic abuse hearing. The video showed someone starting a fire in a dumpster located between her and her son's property. Barbara testified that she recognized Judson's truck in the video.

When Ms. McManus was questioned about the two video recordings, counsel for Judson again objected, but the trial court overruled the objection and allowed the testimony. Ms. McManus testified that she had viewed the two recordings; her testimony regarding both essentially mirrored Barbara's testimony.

Both Barbara and Ms. McManus offered testimony that their vehicles' tires had been slashed while parked on their respective properties; however, both admitted that they had not witnessed the acts of vandalism. Barbara told the trial court that the reason she wanted the abuse order to cover her granddaughters was because they resided in such close proximity to her residence and because they were scared of Judson. Ms. McManus confirmed that her two daughters were afraid of Judson.

Judson refused to testify at the hearing, instead choosing to assert his Fifth Amendment right against self-incrimination on the ground that criminal charges were pending against him. Thereafter, Barbara's attorney requested that the trial court apply an adverse inference against Judson. The trial court acknowledged that Barbara was entitled to the benefit of an adverse inference as a result of Judson's refusal to testify.

At the close of the evidence and testimony, the trial court orally ruled that it was granting the relief Barbara sought. The following day, on August 6, 2009, the trial court signed a Domestic Abuse Order granting a protective order in favor of

4

Barbara and her two granddaughters ordering Judson not to: 1) abuse, harass, stalk, follow or threaten the protected persons in any manner; 2) contact the protected persons personally, electronically, by phone, in writing, or through a third party, without the express written permission of the court; 3) go within 100 yards of Barbara's residence at 240 Shell Beach Drive or her granddaughters' residence at 238 Shell Beach Drive; or 4) damage any of the belongings of the protected persons or interfere with their living conditions. The order further granted Barbara use of the Shell Beach residence and use and possession of the 2003 Mercedes that she and Judson co-owned. Judson was ordered to pay all court costs associated with the hearing as well as Barbara's attorney fees in the amount of $750.

Judson now appeals, asserting that the trial court erred in: 1) finding sufficient evidence of domestic abuse as defined in La.R.S. 46:2132 and 2) in allowing the introduction of evidence of damage to property and in allowing testimony of the contents of video recordings when there was no evidence of any of the exceptions found in La.Code Evid. art. 1004.[4] While not specifically

---

[4]Louisiana Code of Evidence Article 1004, which is entitled "**Admissibility of other evidence of contents**," provides as follows:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
>
> **(1) Originals lost or destroyed.** All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;
>
> **(2) Original not obtainable.** No original can be obtained by any available judicial process or procedure;
>
> **(3) Original in possession of opponent.** At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing;
>
> **(4) Collateral matters.** The writing, recording, or photograph is not closely related to a controlling issue; or

assigned as error, Judson also challenges the authority of the trial court to extend coverage of the protective order to include Barbara's grandchildren.

## DISCUSSION

In *Rouyea v. Rouyea*, 00-2613, p. 3 (La.App. 1 Cir. 3/28/01), 808 So.2d 558, 560, our brethren of the first circuit stated:

> Under the Domestic Abuse Assistance Statute, La. R.S. 46:2131, et seq., upon good cause shown in an *ex parte* proceeding, the court may issue a TRO to protect a person who shows immediate and present danger of abuse. La. R.S. 46:2135(A). If the TRO is granted without notice, the matter shall be set for a hearing within twenty days, at which time, cause must be shown why a protective order should not be issued. At the hearing, the petitioner must prove the allegations of abuse by a preponderance of the evidence. La. R.S. 46:2135(B).

The standard of review that we must apply was set out in *Ruiz v. Ruiz*, 05-175, p. 4 (La.App. 5 Cir. 7/26/05), 910 So.2d 443, 445, (citation omitted) as follows:

> In cases decided pursuant to the Domestic Abuse Assistance Statute, a trial court's order is reversible only upon a showing of an abuse of discretion. Further, the trial court sitting as the trier of fact is in the best position to evaluate the demeanor of the witnesses and its credibility determinations will not be disturbed by this Court absent manifest error.

### *Did Barbara prove her allegations of domestic abuse by a preponderance of the evidence?*

In enacting the Domestic Abuse Assistance Statute, the legislature noted that its intent was "to provide a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection." La.R.S. 46:2131. According to the statute, "'Domestic abuse' includes but is not limited to physical

---

**(5) Impracticality of producing original.** The original, because of its location, permanent fixture, or otherwise, cannot as a practical matter be produced in court; or the cost or other consideration to be incurred in securing the original is prohibitive and it appears that a copy will serve the evidentiary purpose.

or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family or household member against another." La.R.S. 46:2132(3). "Battery" is defined, in part, as "the intentional use of force or violence upon the person of another." La.R.S. 14:33. Battery is listed under Part II of the Criminal Code of Louisiana under the title of "Offenses Against the Person." Thus, battery fits the definition of "Domestic abuse" given in the Domestic Abuse Assistance Statute.

In finding that Barbara had met her burden of proof under the domestic abuse statute, the trial court stated that while it "should consider" the evidence that Barbara presented concerning the slashing of vehicle tires and the damaging of items on her son's property, it was focusing on the testimony concerning the physical altercation over the car keys and the photograph submitted as Exhibit P–1 which depicted the injury inflicted upon Barbara's right arm during that struggle. The trial court concluded that the evidence presented regarding the key incident was sufficient to prove domestic abuse whereby Barbara was entitled to protection under the statute. In doing so, it agreed with Barbara's argument that she was not required to show a pattern of violence or abuse in order to receive the relief prayed for in her PDAP.

We agree that Judson's act of striking Barbara on the arm with her keys amounted to domestic abuse. Considering the verified allegations in Barbara's PDAP, along with her testimony concerning the key incident and the photograph documenting the injuries that she received in that incident, bolstered by the adverse inference[5] that arose when Judson chose to assert his Fifth Amendment

---

[5]"[I]n a civil case, a negative inference may be drawn against a *party* to the action who asserts his Fifth Amendment privileges." *Econ. Auto Salvage, Inc. v. Allstate Ins. Co.*, 499 So.2d 963, 977 (La.App. 3 Cir.), *writ denied*, 501 So.2d 199 (La.1986). In *Baxter v. Palmigiano*, 425 U.S. 308, 318,

7

right against self-incrimination rather than testify regarding Barbara's allegations against him, we cannot say that the trial court abused its discretion in concluding that Barbara proved her allegations of domestic abuse by a preponderance of the evidence.  Accordingly, the trial court properly issued the Domestic Abuse Order. Judson's first assignment of error lacks merit.

### Did the trial court err in allowing the introduction of evidence of damage to property and in allowing testimony concerning the contents of video recordings?

At the domestic abuse hearing, Judson objected to the trial court's allowance of testimony concerning the video recordings on the basis that the recordings themselves were the best evidence of their contents.  On appeal, however, Judson now complains that the trial court erred in allowing testimony of the contents of the recordings when there was no evidence that any of the exceptions found in La.Code Evid. art. 1004 were applicable.

> At trial, a party must make a timely objection to evidence that the party considers inadmissible *and* must state the specific ground for the objection.  La. C.E. art. 103 A(1); La. C.C.P. art. 1635.  The reasons for the objection must be sufficiently brought to the attention of the trial court to allow it the opportunity to make the proper ruling and prevent or cure any error.  *See Jeansonne v. Bosworth*, 601 So.2d 739, 744 (La.App. 1st Cir.1992), *writ not considered*, 614 So.2d 75 (La.1993).  An appellate court will therefore not consider a ground for objection different from the grounds raised at trial.  *Tutorship of Price v. Standard Life Ins. Co.*, 569 So.2d 261, 264 (La.App. 2d Cir.1990), *writs denied*, 572 So.2d 91, 92 (La.1991).

*State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 04-1311, p. 9 (La.App. 1 Cir. 6/15/05), 925 So.2d 1, 6-7.  Because Judson did not draw the trial court's attention to La.Code Evid. art. 1004 as the ground for his objection to the introduction of

---

96 S.Ct. 1551, 1558 (1976), the Supreme Court stated that in a civil proceeding "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them:  the Amendment 'does not preclude the inference where the privilege is claimed by a party to a Civil cause.' 8 J. Wigmore, Evidence 439 (McNaughton rev. 1961)."  In the present case, Judson has not challenged the trial court's application of an adverse inference against him.

testimony concerning the video recordings, he is precluded from urging that ground on appeal.

Nevertheless, as we mentioned previously, the trial court specifically noted that it did not focus on the evidence regarding damage to property in determining that Barbara had met her burden of proof. We, too, conclude that Barbara proved her entitlement to a Domestic Abuse Order against Judson without regard to the testimony that she and her daughter-in-law offered concerning what they saw on the video recordings. Accordingly, any error which the trial court may have committed in allowing testimony concerning the contents of the video recordings would be harmless, not prejudicial, and thus not reversible error. *See Duzon v. Stallworth*, 01-1187 (La.App. 1 Cir. 12/11/02), 866 So.2d 837, *writs denied*, 03-589, 03-605 (La. 5/2/03), 842 So.2d 1101, 842 So.2d 1110; La.Code Civ.P. art. 1635. Judson's second assignment of error is meritless.

### *Did the trial court err in granting a protective order in favor of Barbara's grandchildren?*

Judson complains that the trial court lacked authority to issue a protective order in favor of Barbara's grandchildren, his step-grandchildren. He bases his argument on the fact that the Domestic Abuse Statute does not specifically list "grandchildren" in the definition of "Family members." Barbara counters that the statutory scheme is broad enough to include any minor child needing protection from an abusive family member. Neither Judson nor Barbara cites any jurisprudence in support of their position. Likewise, we have not found any jurisprudence to offer any guidance regarding this issue.

The Domestic Abuse Assistance Statute provides that "'[f]amily members' means spouses, former spouses, parents and children, stepparents, stepchildren,

foster parents, and foster children." La.R.S. 46:2132(4). On the other hand, the statute provides that "[t]he court may grant any protective order . . . to bring about a cessation of abuse of . . . any minor children." La.R.S. 46:2136(A). In addition, the statute directs that "[t]he courts of this state shall use a uniform form for the issuance of any protective or restraining order, which form shall be developed, approved, and distributed by the Judicial Administrator's Office, [and] shall be titled the 'Uniform Abuse Prevention Order.'" La.R.S. 46:2136.2(C). The administrative construction given the provision by the administrative agency charged with enforcing it constitutes persuasive interpretive authority. *Roberts v. City of Baton Rouge*, 236 La. 521, 108 So.2d 111 (1958). The "Louisiana Uniform Abuse Prevention Order" that Barbara filed appears at pages twenty-four through twenty-eight of the record. The portion of the form describing the persons seeking protection in the order lists the categories of "Family members" mentioned in La.R.S. 46:2132, as well as a category entitled "grandparent or grandchild." Thereafter, there is a category entitled "Other" with a blank provided for writing in an additional category of person(s) seeking protection and their relationship to the defendant. In the PDAP, Barbara listed her granddaughters' relationship to Judson as that of "Other: Step-Grandchildren."

Even if we ignore the testimony concerning the video recordings, other testimony provided at the domestic abuse hearing indicates that Judson continued to come within one hundred yards of Barbara's residence even after the TRO was issued on July 21, 2009. Given the intent and purpose of the Domestic Abuse Assistance Statute, the layout of the Louisiana Uniform Abuse Prevention Order form, and the fact that Barbara's granddaughters live next door to her residence,

10

we cannot say that the trial court abused its discretion in granting a protective order that included them in its scope of protection.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed in all respects. All costs of this appeal are assessed to Judson Hugh McCann, II.

**AFFIRMED.**